UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Tim Clifton,

        Plaintiff,

    vs.                      REPORT AND RECOMMENDATION

Hennepin County Deputy
Horbin, Hennepin County
Sheriff's Department,
Hennepin County,

        Defendants.        Civ. No. 05-2472 (DWF/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

I.  <u>Introduction</u>

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. § 636(b)(1)(B), upon the Motion of Hennepin County Deputy Horobin ("Horobin")[1] for Judgment on the Pleadings, Summary Judgment, or to Dismiss, and upon the Motion of Hennepin County, and the Hennepin County Sheriff's Department, for Judgment on the Pleadings, or to Dismiss.  For these purposes, the

---

[1] While the Caption of the Plaintiff's Complaint identifies the Defendant as Deputy Horbin, the correct spelling of the Defendant's name is "Horobin."

Plaintiff appears pro se, Horobin appears by Richard D. Hobson, Assistant Washington County Attorney, and Hennepin County, and the Hennepin County Sheriff's Department, appear by Toni A. Bentz, Senior Assistant Hennepin County Attorney.

For reasons which follow, we recommend that the Motion of Hennepin County, and the Hennepin County Sheriff's Department, for Judgment on the Pleadings, or to Dismiss be granted, and that Horobin's Motion for Judgment on the Pleadings, Summary Judgment, or to Dismiss, be denied.

## II.  Factual and Procedural Background

The Plaintiff, who is a Minnesota State prisoner, commenced this action under Title 42 U.S.C. §1983, alleging that the Defendants violated his Federal constitutional rights while he was being detained at the Hennepin County Adult Detention Center ("Detention Center").   Specifically, the Plaintiff alleges that Horobin, who was working as a Detention Deputy for Hennepin County, along with other Deputies, physically assaulted him, and that Horobin sexually assaulted him.   As a result of those alleged violations, the Plaintiff is seeking money damages in the amount of $1,000,000.00.   The Plaintiff's Complaint was signed "under penalty of perjury" as

being "true to the best of [the Plaintiff's] information, knowledge, and belief." Complaint, at unnumbered p. 6.

On September 4, 2005, the Plaintiff, who was being detained at the Detention Center, threw a bag of potato chips from the second tier of cells onto the lower level. Chad Caldwell ("Caldwell"), who is a Detention Deputy for the Hennepin County Sheriff's Department, and who was supervising the area where the Defendant was located when the Plaintiff threw the bag of chips, instructed the Plaintiff to return to his cell, where he would be locked in. The Plaintiff alleges that he followed Caldwell's instruction, and that he returned to his cell, where he was locked in.

The Plaintiff alleges that, approximately ten (10) minutes after he was locked in, Horobin activated the intercom, and asked the Plaintiff why he had thrown the bag of chips. Horobin then instructed the Plaintiff to roll up his bedding because he was going to be moving to another unit. The Plaintiff asserts that he complied with Horobin's instructions, and that, approximately fifteen (15) minutes later, Horobin opened the door to his cell. Horobin instructed the Plaintiff to exit his cell, and to walk into a corridor which adjoined the unit where the Plaintiff was being housed. The Plaintiff alleges that he complied with Horobin's instructions, and that he walked to a foyer area between the unit and the hallway.

- 3 -

The Plaintiff asserts that Horobin instructed him to drop his bedding, and to turn around, in order to be placed in handcuffs.  According to the Plaintiff, Horobin handcuffed him "extremely tightly" in such a manner that he lost all feeling in his hands.  The Plaintiff maintains that Horobin subsequently instructed him repeatedly to get down on his knees, but that Horobin also prevented him from moving to his knees, by standing very close to him.  According to the Plaintiff, Horobin then reached around towards his back, grabbed the handcuffs, twisted the Plaintiff -- which caused his face to be pointed towards the wall -- and pushed his arms towards the ceiling.  Allegedly, Horobin then threw the Plaintiff into the wall on the other side of the hallway, and he directed the Plaintiff to lay down on his stomach.  The Plaintiff asserts that he complied with Horobin's request, at which time, Horobin placed his knee on the Plaintiff's back, reached his hand underneath the Plaintiff's pants, and began to grope the Plaintiff's buttocks.  According to the Plaintiff, Horobin commented, "You like that don't you sissy-boy," to which the Plaintiff responded "No, I'm going to write you up."  The Plaintiff alleges that Horobin then told him, "This is my house, no one is going to believe you."  Horobin then placed his knee between the Plaintiff's buttocks, and directed him to lift both of his legs up.

According to the Plaintiff, Caldwell and Jeffrey Beach ("Beach"), who is also a Detention Deputy for the Hennepin County Sheriff's Department, walked into the area where the Plaintiff and Horobin were located. The Plaintiff relates that they were laughing, and that Caldwell and Horobin lifted him off of the floor, in order to escort him to a different cell. Horobin and Beach grabbed the Plaintiff's arms, and the three (3) Deputies walked with the Plaintiff to another cell, which was near the booking area. The Plaintiff maintains that, upon entering the cell, the Deputies threw him on the floor. Beach allegedly screamed at him not to move, and he began to twist the Plaintiff's arm. As recounted by the Plaintiff, Horobin put his face next to the Plaintiff's ear, and threatened him by stating that "this" would happen.

The Plaintiff states that Beach continued to tighten his handcuffs before he released them, and that he twisted the Plaintiff's arm until the Plaintiff began to scream that Beach was breaking his arm. Beach then released the Plaintiff's arms, and backed out of the cell. The Plaintiff maintains that he continued to lay on the floor of the cell, for approximately fifteen (15) minutes, when he was approached by another Deputy, who asked him what had happened. According to the Plaintiff, that Deputy advised him that he would contact a nurse but, after approximately one (1) hour had

elapsed, no nurse had arrived.  The Plaintiff states that he made another request to see the nurse, which was ignored, and that he was later taken to segregation.

Subsequently, the Plaintiff obtained a copy of the report that had been created by the various Deputies who were involved in the incident.  The Plaintiff asserts that the representations, which were made in that report, are false.

The Plaintiff filed a grievance against Horobin, which was investigated by Tracey Martin ("Martin"), who is a Sergeant Deputy for the Hennepin County Sheriff's Department.  As part of that investigation, Martin interviewed the Plaintiff, as well as Horobin, Caldwell, Beach, Aaron Harp ("Harp"), Kelly Koza ("Koza"), David O'Donnell ("O'Donnell"), and Charles Pangrac ("Pangrac.").[2]  Martin also obtained a video of the Plaintiff being placed into a cell by Horobin, Caldwell, and Beach, as well as a picture of the hallway where the initial encounter between Horobin and the Plaintiff occurred, together with pictures of the Plaintiff's backside, buttocks, and wrists.  No video was available of the area where Horobin was alleged to have sexually assaulted the Plaintiff, nor was that encounter witnessed by any other Detention Center staff member or inmate.

---

[2]Harp, Koza, and O'Donnell, are each Detention Deputies for the Hennepin County Sheriff's Department, while Pangrac is a Detention Sergeant for the Hennepin County Sheriff's Department.

In support of his Motion, Horobin has submitted transcripts of statements that were made by the Plaintiff, Horobin, Caldwell, Beach, Harp, Koza, and Pangrac, as a part of the internal investigation.  With the exception of the Plaintiff, each of the identified interviewees has sworn, under penalty of perjury, to the accuracy of his or her transcribed statement.  See, Affidavit of Chad Caldwell ("Caldwell Aff."), at ¶4; Affidavit of David O'Donnell ("O'Donnell Aff."), at ¶4; Affidavit of Erin Dearing ("Dearing Aff."), at ¶4; Affidavit of Jeffrey Beach ("Beach"), at ¶4; Affidavit of Aaron Harp ("Harp Aff."), at ¶4; Affidavit of Kelly Koza ("Koza Aff."), at ¶4; Affidavit of Charles Pangrac ("Pangrac Aff."), at ¶4; Affidavit of Ashley Horobin ("Horobin Aff."), at ¶4.  As is pertinent to the Plaintiff's claims, those statements reflect that, after the Plaintiff had thrown a bag of potato chips over the railing on the second floor of his cell unit, Caldwell gave multiple directives for the Plaintiff to return to his cell, in order to be locked in.  Caldwell Aff., at p. 4.  The Plaintiff refused, and Caldwell directed that the entire unit be locked in.  While all of the inmates were returning to their cells, the Plaintiff returned to his cell.  Id.  Shortly thereafter, Horobin returned to the unit, and the Deputies determined that the appropriate course of action would be to seek authorization to move the Plaintiff out

of the unit.  Id.; Horobin Aff., at p. 4.  Apparently, Caldwell left the unit, in order to return another inmate, who was confined to a wheelchair, to the medical unit.  Id.

Horobin contacted the Plaintiff, and advised him that he was going to be removed from the unit.  Horobin Aff., at ¶5.  The Plaintiff then walked down from the cell and into a corridor, as he had been instructed to do.  Horobin asserts that he instructed the Plaintiff to move his hands behind his back, in order to be placed in handcuffs, and that, when he placed the handcuffs on the Plaintiff, the Plaintiff "[came] off the wall" in what appeared to Horobin to be an attempt to "kick or do something" to him.  Id.  According to Horobin, he grabbed the Plaintiff by the shirt, in order to push him away, placed him onto the floor, and then directed the Plaintiff to put his legs behind his back.  Horobin avers that the directive was necessary in order to allow him to cross the Plaintiff's legs, which is standard procedure, as a protective measure against being kicked.  Id., at pp. 5, 11, 12.  The Plaintiff resisted Horobin's attempts to cross his legs, and Horobin contacted Caldwell for assistance. Id. at p. 5; Caldwell Aff. at p. 4.  Caldwell arrived sometime thereafter, and he assisted Horobin in securing the Plaintiff.  Horobin subsequently contacted Beach, who arrived in the corridor, as Horobin and Caldwell were picking the Plaintiff up, in order to escort him to a different cell.  Beach Aff. at p. 4.

- 8 -

During his interview, Horobin was asked whether he had instructed the Plaintiff to get on his knees; whether he had grabbed the Plaintiff's handcuffs, in an attempt to force the Plaintiff onto his knees; whether he placed his hand inside of the Plaintiff's pants, and grabbed his buttocks; whether he had forcefully placed his knee between the Plaintiff's buttocks; whether he had made any statements to the Plaintiff to the effect of "you like this, don't you," or that "this is my house and no one will believe what you have to say;" and whether the Plaintiff ever threatened to write Horobin up. Horobin Aff., at pp. 12, 15.  Horobin denied engaging in any such conduct, or making any such statements.  Id.

The Plaintiff was subsequently escorted to a different cell on the ground floor of the Detention Center by Horobin, Beach, and Caldwell.  After exiting an elevator, the Plaintiff was brought into the cell, where he was instructed to get down on his knees, and then to lie face down, on the floor.  The Plaintiff moved to his knees, but apparently refused the deputies' directive to lie on the floor.  Caldwell Aff., at p. 5; Beach Aff., at p. 5.  The deputies forced the Plaintiff to the floor, and they instructed the Plaintiff that, if he attempted to move while the deputies were exiting the cell, he would be sprayed with pepper spray.  Beach further advised the Plaintiff that they

needed him to verbally indicate his understanding that he was not to move, but that the Plaintiff refused to give any. <u>Beach Aff.</u>, at p. 5 and 10; <u>Horobin Aff.</u>, at p. 18.

Beach then used a pain compliance technique on the Plaintiff's arm, which he describes as a "cradle goose neck," and he repeatedly asked the Plaintiff whether he understood the earlier instruction. <u>Id.</u>; <u>Caldwell Aff.</u>, at p. 15; <u>Horobin Aff.</u>, at p. 18 The Plaintiff did not respond and, after approximately five (5) seconds, Beach released the hold, and Horobin told the Plaintiff that they were going to remove his handcuffs. <u>Id.</u>  The Plaintiff continued to resist, while Horobin attempted to remove his handcuffs.  <u>Id.</u> at p. 12; <u>Caldwell Aff.</u> at p. 15; <u>Horobin Aff.</u>, at p. 19  As the officers were removing the handcuffs, the Plaintiff attempted to free himself from the Deputies, which prompted Beach to repeatedly instruct the Plaintiff to refrain from moving.  At some point, the Plaintiff began to scream that the Deputies were breaking his arm.  According to Beach, the Plaintiff's arms were being held in roughly the same position in which they were when the handcuffs were still on, and none of the Deputies were using a pain compliance technique at the time that the Plaintiff began to scream. <u>Id.</u> at pp. 14 and 15.

After the Plaintiff's handcuffs had been removed, the deputies effected a "Safe Cell" exit, and they closed the door to the cell.  During the time that the deputies were

struggling with the Plaintiff in the cell, O'Donnell, Harp, Koza, and Dearing, were positioned outside of the cell.  <u>O'Donnell Aff.</u>, at p.4; <u>Harp Aff.</u>, at p. 4; <u>Koza</u>, at pp. 4-5; <u>Dearing Aff.</u>, at pp. 4-5.  Several minutes after the deputies had exited the cell, Pangrac approached the Plaintiff and inquired as to what had happened.   Pangrac could not recall the contents of his conversation with the Plaintiff, but he has asserted that, if the Plaintiff had related information about a sexual assault, he would have remembered such a statement.  <u>Pangrac Aff.</u>, at pp.14-15.

The video, which depicted the placement of the Plaintiff in the cell, shows the Plaintiff walking into the cell and, consistent with the Deputies' instructions, getting down on his knees.  <u>Martin Aff.</u> at Exh. B.  Beach then instructed the Plaintiff to get down onto his stomach, and it appears that the Plaintiff laid down onto his stomach. Beach proceeded to warn the Plaintiff not to make any false move, and he instructed the Plaintiff to verbalize his understanding of that directive.   The Plaintiff did not respond, and Beach continued to instruct the Plaintiff, in a raised voice, to provide a verbal response.   Horobin also repeatedly instructed the Plaintiff to provide some verbal response.  At one point, Beach told the Plaintiff that the handcuffs were going to stay on, and that "the pain" was going to persist until the Plaintiff provided a verbal

response.  Several seconds later, Horobin told the Plaintiff that his handcuffs were going to be removed,  and he instructed the Plaintiff not to move.

A period of silence ensued, which lasted several seconds, during which Horobin began to stand up, and to move from the Plaintiff.  The Plaintiff subsequently began to scream at the Deputies to "quit," and that they were breaking his arm, to which Beach responded, "we're not doing shit to you."  Beach repeatedly instructed the Plaintiff not to move, and the deputies exited the cell.  Several minutes later, Pangrac arrived at the cell, and asked the Plaintiff what had happened.  In our review of the video, we could not discern the Plaintiff's response to Pangrac's inquiry.

After concluding the investigation, Martin issued an Investigative Report, which summarized the information that had been gathered during the inquiry, as well as a Findings Report, which detailed the conclusions that were reached by the investigators.  See, <u>Martin Aff.</u>, at Exhs. C and D.  Notably, the investigators determined that there was insufficient evidence to clearly prove or disprove that Horobin had used excessive force in his interactions with the Plaintiff, or that he had failed to conduct himself in a manner that exemplifies high standards of professionalism, integrity, trust, morality, and ethical behavior.  However, the investigators did find sufficient evidence to clearly prove that Horobin had failed to

use good judgment when he decided to move the Plaintiff from his cell without assistance from another Deputy.

In so concluding, the investigating officers noted that no persons, other than the Plaintiff and Horobin, had been present during Horobin's initial encounter with the Plaintiff, and that, with respect to the Plaintiff's contention that Horobin had sexually assaulted him, "the allegation amounts to [the Plaintiff's] word against Deputy Horbin's word." <u>Martin Aff.</u>, Exh. D, at p. 2. Nevertheless, the investigators determined that other assertions, which had been made by the Plaintiff, "were clearly not true and this damaged his credibility." <u>Id.</u> The investigators also noted that the Plaintiff had not told Pangrac about the alleged assault, when Pangrac had inquired as to what had happened, and that, while the photographs of the Plaintiff's buttocks showed scratches, those scratches were at an angle which suggested self-infliction.

<u>Discussion</u>

A.   <u>The Motion of Hennepin County and the Hennepin County Sheriff's Department for Judgment on the Pleadings, or to Dismiss.</u>

1.   <u>Standard of Review</u>.   Rule 12(c), Federal Rules of Civil Procedure, allows parties to move the Court for a Judgment on the pleadings, "[a]fter the pleadings are closed, but within such time as not to delay the trial." The standard, upon which Rule 12(c) Motions are decided, is akin to that of a Motion to Dismiss

pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure.  Flora v. Firepond, Inc., 260 F. Supp.2d 780, 784 (D. Minn. 2003).  Thus, a "[j]udgment on the pleadings is appropriate where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law."  Faibisch v. University of Minnesota, 304 F.3d 797, 803 (8th Cir. 2004), citing United States v. Any & All Radio Station Transmission Equip., 207 F.3d 458, 462 (8th Cir. 2000).  A disputed fact is "material," if it must inevitably be resolved and the resolution will determine the outcome of the case.  See, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Herring v. Canada Life Assurance, 207 F.3d 1026 (8th Cir. 2000); Liebe v. Norton, 157 F.3d 574, 578 (8th Cir. 1998); Dodd v. Runyon, 114 F.3d 726, 729 (8th Cir. 1997).

When making such determinations, "[w]e accept as true, all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party."  Faibisch v. University of Minnesota, supra at 803, quoting United States v. Any & All Radio Station Transmission Equip., supra at 462. However, the Court need not accept, as true, wholly conclusory allegations, or unwarranted factual inferences.  See, Hanten v. School Dist. of Riverview Gardens, 183 F.3d 799, 805 (8th Cir. 1999); Springdale Educ. Ass'n v. Springdale School Dist., 133 F.3d 649, 651 (8th Cir. 1998); Bradley v. Chiron Corp., 136 F.3d 1317, 1322 (Fed.

Cir. 1998); <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902, 906 (3rd Cir. 1997);

<u>LRL Properties v. Portage Metro Housing Authority</u>, 55 F.3d 1097, 1103 (6th Cir.

1995).  Moreover, in treating the factual allegations of a Complaint as true, the Court

"do[es] not, however, blindly accept the legal conclusions drawn by the pleader from

the facts."  <u>Westcott v. City of Omaha</u>, 901 F.2d 1486, 1488 (8th Cir. 1990), citing

<u>Morgan v. Church's Fried Chicken</u>, 829 F.2d 10, 12 (6th Cir. 1987).

    2.    <u>Legal Analysis</u>.  As an initial matter, the Plaintiff's claims against the

Hennepin County Sheriff's Department must be dismissed because a sheriff's

department is "not a legal entity subject to suit."  <u>In re Scott County Master Docket</u>,

672 F. Supp. 1152, 1163 n. 1 (D. Minn., 1987), aff'd. <u>sub</u> <u>nom.</u>, <u>Meyers v. Scott</u>

<u>County</u>, 868 F.2d 1017 (8th Cir. 1989); see, <u>De la Garz v. Kandiyohi County Jail</u>, 18

Fed. Appx. 436, 437 (8th Cir., August 30, 2001), citing <u>Dean v. Barber</u>, 951 F.2d 1210,

1215 (11th Cir. 1992)("Sheriff's departments and police departments are not usually

considered legal entities subject to suit.").

    Similarly, the Plaintiff's claims against the County are also without merit, as

he has failed to allege that Hennepin County has adopted some policy or custom,

which authorized the alleged conduct.  Notably, the doctrine of <u>respondeat</u> <u>superior</u>

does not apply to Section 1983 claims, which means that a defendant cannot be held

vicariously liable for the alleged constitutional misdeeds of an employee or subordinate.  See, Monell v. Department of Social Services, 436 U.S. 658, 694 (1978); Miller v. Compton, 122 F.3d 1094, 1100 (8th Cir. 1997).  Stated otherwise, "[a] municipality cannot be held liable solely because it employs a tort feasor -- or in other words, a municipality cannot be held liable under §1983 on a respondeat superior theory."  Kuha v. City of Minnetonka, 365 F.3d 590, 603 (8th Cir. 2004), quoting Monell v. Department of Social Services, supra at 691.

A municipality, such as Hennepin County, can be liable under Section 1983, if a plaintiff can prove that the municipality has adopted some policy, custom, or practice, that caused a violation of the plaintiff's Federal constitutional rights.  See, Lund v. Hennepin County , 427 F.3d 1123, 1125 (8th Cir. 2005); City of Canton v. Harris, 489 U.S. 378, 386-87 (1989); see also, Angarita v. St. Louis County, 981 F.2d 1537, 1546 (8th Cir. 1992)("A municipality may be held liable under Section 1983 only if a municipal custom or policy caused the deprivation of [a] right protected by the constitution or federal laws"); Williams v. Little Rock Municipal Water Works, 21 F.3d 218, 223 (8th Cir. 1994)("[M]unicipal governments can be held liable for the acts of their employees in contravention of the civil rights of individuals only upon a showing that a 'policy statement, ordinance, regulation, or decision officially

adopted and promulgated by that body's officers' is the motivating force behind the acts of those employees"), quoting <u>Monell v. Department of Social Services</u>, supra at 690.

Liberally construed, the Plaintiff's Complaint alleges that his constitutional rights were violated when he was allegedly accosted by Horobin, Beach, and Caldwell, during their removal of him from his cell, and his placement in another cell. However, he does not allege that the conduct of those Deputies was performed pursuant to some policy or custom of Hennepin County, or was the result of any failure on the part of the County to supervise its employees. As such, he has failed to allege any facts, which would give rise to a viable Section 1983 claim against Hennepin County. Therefore, we recommend that the Motion of Hennepin County, and the Hennepin County Sheriff's Department for Judgment on the Pleadings, or to Dismiss be granted, and that the Plaintiff's claims against those Defendants be dismissed.[3]

_____

[3]While the Court, in <u>De la Garza v. Kandiyohi County Jail</u>, 18 Fed. Appx 436, 437 (8th Cir., August 30, 2001), dismissed the plaintiff's claims, since the jail, and the sheriff's department, were not subject to suit, it did so without prejudice, in order to afford the plaintiff an opportunity to commence his action against a suable entity or individual. However, since we have also found that the Plaintiff has failed to state a viable claim against Hennepin County, we recommend that his claim against the Hennepin County Sheriff's Department be dismissed with prejudice.

B.    Horobin's Motion for Judgment on the Pleadings, or to Dismiss, or for
      Summary Judgment.

    1.    Standard of Review.  Summary Judgment is not an acceptable means of resolving triable issues, nor is it a disfavored procedural shortcut when there are no issues which require the unique proficiencies of a Jury in weighing the evidence, and in rendering credibility determinations.  See, Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986); Midwest Oilseeds, Inc. v. Limagrain Genetics Corp., 387 F.3d 705, 711 (8th Cir. 2004), cert. denied, 544 U.S. 977 (2005).  Summary Judgment is appropriate when we have viewed the facts, and the inferences drawn from those facts, in a light most favorable to the nonmoving party, and we have found no triable issue.  See, Eide v. Grey Fox Technical Servs. Corp., 329 F.3d 600, 604 (8th Cir. 2003); Philip v. Ford Motor Co., 328 F.3d 1020, 1023 (8th Cir. 2003); United Fire & Casualty Co. v. Garvey, 328 F.3d 411, 413 (8th Cir. 2003).  For these purposes, a disputed fact is "material" if it must inevitably be resolved and the resolution will determine the outcome of the case, while a dispute is "genuine" if the evidence is such that a reasonable Jury could return a verdict for the nonmoving party.  See, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Planned Parenthood of Minnesota/ South Dakota v. Rounds, 372 F.3d 969, 972 (8th Cir. 2004); Fenney v. Dakota, Minnesota & Eastern R. Co., 327 F.3d 707, 711 (8th Cir. 2003).

As Rule 56(e) makes clear, once the moving party files a properly supported Motion, the burden shifts to the nonmoving party to demonstrate the existence of a genuine dispute.  In sustaining that burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial."  Rule 56(e), Federal Rules of Civil Procedure; see also, Anderson v. Liberty Lobby, Inc., supra at 256; Eddings v. City of Hot Springs, Ark., 323 F.3d 596, 602 (8th Cir. 2003).  Moreover, the movant is entitled to Summary Judgment where the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, supra at 322; see also, Forest Park II v. Hadley, 408 F.3d 1052, 1057 (8th Cir. 2005); Mercer v. City of Cedar Rapids, 308 F.3d 840, 843 (8th Cir. 2002); Hammond v. Northland Counseling Center, Inc., 218 F.3d 886, 891 (8th Cir. 2000).  No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Celotex Corp. v. Catrett, supra at 323; see also, Sallis v. University of Minnesota, 408 F.3d 470, 474

(8th Cir. 2005); <u>Davis v. U.S. Bancorp</u>, 383 F.3d 761, 768 (8th Cir. 2004); <u>Bell Lumber and Pole Co. v. United States Fire Ins. Co.</u>, 60 F.3d 437, 441 (8th Cir. 1995).

B.    <u>Legal Analysis</u>.  The Plaintiff seeks relief, under Title 42 U.S.C. §1983, for alleged violations of his Federal constitutional rights.   Giving his Complaint the benefit of a liberal construction because of his <u>pro</u> <u>se</u> status, see, <u>Denton v. Hernandez</u>, 504 U.S. 25, 32 (1992), and <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972), the Plaintiff asserts that Horobin used excessive force against him, following the decision to move him out of his cell.   Horobin maintains that he is entitled to Judgment as a matter of law because: 1) the Plaintiff has not established any genuine issue of material fact that Horobin violated his rights under the United States Constitution, and 2) Horobin is entitled to qualified immunity.

When qualified immunity is asserted in a Section 1983 action, we "must first consider the threshold question of whether, construed in a light most favorable to the party asserting the injury, the facts alleged show the officer's conduct violated a constitutional right."   <u>Andrews v. Fuoss</u>, 417 F.3d 813, 816 (8th Cir. 2005), quoting <u>Crow v. Montgomery</u>, 403 F.3d 598, 601 (8th Cir. 2005); see, <u>Wilson v. Layne</u>, 526 U.S. 603 (1999) [citations omitted].   "Only then do we ask whether that right was

- 20 -

clearly established at the time of the alleged violation." Id.; see, Coonts v. Potts, 316

F.3d 745, 750 (8th Cir. 2003), citing Siegert v. Gilley, 500 U.S. 226, 232 (1991).

      1.   The Constitutional Claim.  While Plaintiff's Complaint does not

identify the Constitutional provision, upon which his claim is predicated, his

subsequent submissions, as well as the nature of the Plaintiff's attestations, suggest

that he is asserting a claim that Horobin used excessive force against him, in violation

of the Plaintiff's Eighth Amendment right to be free from cruel and unusual

punishment.[4]

      The Eighth Amendment requires that prison officials provide humane

conditions of confinement.  Farmer v. Brennan, 511 U.S. 825, 832 (1994).  Along

with prohibiting barbarous physical punishment, "[t]he Eighth Amendment bars

correctional officers from imposing unnecessary and wanton pain on inmates,

---

[4]Our Court of Appeals has recognized that excessive force claims, which are commenced by prisoners are governed by the Eighth Amendment, while those that are brought by pretrial detainees are governed by the Fifth and Fourteenth Amendment. See, Andrews v. Neer, 253 F.3d 1052, 1060-61 (8th Cir. 2001).  Neither party has addressed this distinction, in the context of the Plaintiff's claims and, in the absence of any guidance from the parties, we analyze the Plaintiff's claims under the Eighth Amendment.  Notably, the Record reflects that, at the time of the alleged incident, the Plaintiff was serving a sentence for Aggravated Robbery, and that his presence in the Detention Center, was a result of a Writ of Testificandum.  Affidavit of Tracey Martin, at Exh. E.

regardless of whether there is evidence of any significant injury." Johnson v. Blaukat, 453 F.3d 1108, 1112 (8th Cir. 2006), citing Hudson v. McMillian, 503 U.S. 1, 9 (1992). In assessing an Eighth Amendment claim alleging excessive force, a Court must ask both if "the officials act[ed] with a sufficiently culpable state of mind," and if the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation. Wilson v. Seiter, 501 U.S. 294, 298 (1991).

"Officers are permitted to use force reasonably in a good faith effort to maintain or restore discipline, as long as they do not use force maliciously and sadistically to cause harm." Johnson v. Hamilton, 452 F.3d 967, 972 (8th Cir. 2006), citing Treats v. Morgan, 308 F.3d 868, 872 (8th Cir. 2002). "In deciding whether a particular use of force was reasonable, we consider whether there was an objective need for force, the relationship between the need and the amount of force used, the threat reasonably perceived by correctional officers, the efforts by the officers to temper the severity of the forceful response, and the extent of the inmate's injuries." Id.

Here, the Plaintiff has alleged that Horobin instructed the Plaintiff to get on his knees, and then prevented the Plaintiff from doing so, by standing only inches from him. The Plaintiff further alleges that, when he did not comply, Horobin grabbed the Plaintiff's handcuffs, and threw him to the floor, and that, while the Plaintiff was lying

on the floor, Horobin put his hands inside of the Plaintiff's pants, and grabbed his buttocks.  Horobin allegedly proceeded to tell the Plaintiff, "you like that don't you sissy-boy," and that, when the Plaintiff threatened to report Horobin's misconduct, Horobin stated, "this is my house, no one is going to believe you."  Assertedly, Horobin forcefully pushed his knee between the Plaintiff's buttocks.

In support of his Motion, Horobin has submitted an Affidavit, in which he denies that he engaged in any of the alleged conduct, or made any of the comments which are alleged in the Complaint.  As such, Rule 56(e) instructs that the Plaintiff "may not rest upon the mere allegations or denials of [his] pleading," but that he must provide some competent evidence which demonstrates the existence of a genuine issue of material fact.  Rule 56(e), Federal Rules of Civil Procedure.  Here, however, the Plaintiff has verified his Complaint under penalty of perjury and, as such, "it is the equivalent of an affidavit and can serve as [a] response to [a] summary judgment motion under Federal Rule of Civil Procedure 56(e)."  Ward v. Moore, 414 F.3d 968, 970 (8th Cir. 2005), citing Spear v. Dayton, 733 F.2d 554, 555-56 (8th Cir. 1984).

Considering the facts, as they were presented in the Plaintiff's verified Complaint, we are satisfied that there are genuine issues of material fact, concerning whether Horobin's conduct violated the Plaintiff's Eighth Amendment right to be free

from cruel and unusual punishment.  Notably, the Plaintiff's averment, that Horobin sexually assaulted him, are sufficient to state a violation of his rights under the Eighth Amendment, see, <u>Williams v. Prudden</u>, 67 Fed. Appx. 976, 977 (8th Cir., May 19, 2003)(allegation that prison guard forcibly ground his pelvis against inmate, grabbed her breast, verbally demanded sexual favors, made physical advances, and attempted to force himself upon her, were sufficient to state an Eighth Amendment claim); <u>Schwenk v. Hartford</u>, 204 F.3d 1187, 1197 (9th Cir. 2000)(sex assault on an inmate by a guard gives rise to an Eighth Amendment violation); see also, <u>Woodford v. Ngo</u>, --- U.S. ---, 126 S.Ct. 2378, 2402 (2006)("[T]hose inmates who are sexually assaulted by guards * * * have suffered grave deprivations of their Eighth Amendment rights.") (Stevens J., dissenting); <u>Riley v. Olk-Long</u>, 282 F.3d 592, 595 (8th Cir. 2002) (acknowledging that sexual assault by a guard on an inmate was "sufficiently serious to amount to a deprivation of constitutional dimensions."); see also, <u>Coit v. Zavaras</u>, 175 Fed.Appx. 226, 227 (10th Cir., April 7, 2006)("[A] plaintiff's uncontroverted claim of deprivations resulting from sexual assault are sufficiently serious to constitute a violation under the Eighth Amendment."), quoting <u>Gonzales v. Martinez</u>, 403 F.3d 1179, 1186 (10th Cir. 2005), and any determination of the veracity of those allegations will necessarily involve weighing the Plaintiff's credibility against that of

Horobin.   As a consequence, the determination of whether Horobin violated the Plaintiff's Eighth Amendment rights is best left to the finder of fact, and cannot be determined as a matter of law.

2.   <u>Qualified Immunity</u>.   Government officials, who are performing discretionary functions, are generally shielded from liability for civil damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known.   See, <u>Wilson v. Layne</u>, supra at 609; <u>Young v. Harrison</u>, 284 F.3d 863, 866 (8th Cir. 2002); <u>Winters v. Adams</u>, 254 F.3d 758, 766 (8th Cir. 2001).   "To withstand a claim of qualified immunity at the summary judgment stage, a plaintiff must assert a violation of constitutional or statutory right; that right must have been clearly established at the time of the violation; and given the facts most favorable to the plaintiff, there must be no genuine issue of material fact as to whether a reasonable officer would have known that alleged action indeed violated that right."   <u>Mettler v. Whitledge</u>, 165 F.3d 1197, 1202 (8th Cir. 1999); see also, <u>Young v. Harrison</u>, supra at 866-67.

"[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in the light of the legal rules that were 'clearly

established' at the time it was taken."  Wilson v. Layne, supra at 614.  The contours

of the constitutional right at issue "must be sufficiently clear that a reasonable official

would understand that what he is doing violates that right," but "[t]his is not to say

that an official action is protected by qualified immunity unless the very action in

question has previously been held unlawful; but it is to say that in light of pre-existing

law, the unlawfulness must be apparent."  Anderson v. Creighton, 483 U.S. 635, 641

(1987).  Thus, "[t]he doctrine 'gives ample room for mistaken judgments but does not

protect the plainly incompetent or those who knowingly violate the law.'"  Bagby v.

Brondhaver, 98 F.3d 1096, 1098 (8th Cir. 1996).

Here, we find that unlawfulness of Horobin's alleged conduct was sufficiently

established to preclude the application of qualified immunity.  See, Wilkins v. Moore,

40 F.3d 954, 958 (8th Cir. 1994)(finding factual dispute over prisoner's alleged

mistreatment by prison guards, including beatings, and an alleged incident where a

guard ran his finger over the prisoner's rectum precluded summary judgment on

guard's qualified immunity claims); Treats v. Morgan, 308 F.3d 868, 875 (8th Cir.

2002)("It is 'well established that a malicious and sadistic use of force by a prison

official against a prisoner, done with the intent to injure and causing actual injury, is

enough to establish a violation of the Eighth Amendment's cruel and unusual

punishment clause.'"), citing <u>Foulk v. Charrier</u>, 262 F.3d 687, 702 (8th Cir. 2001); see also, <u>Williams v. Prudden</u>, supra at 978 (finding that corrections officer was not imbued with qualified immunity as "any reasonable corrections officer would have known in January 1999 that sexually assaulting inmate would violate the inmate's constitutional rights"), citing <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818-19 (1982). Given our conclusion, that questions of material fact remain concerning the extent of Horobin's interaction with the Plaintiff, we find that, when the facts are taken in the light most favorable to the Plaintiff, Horobin is not entitled to qualified immunity as a matter of law, and accordingly, we recommend that his Motion for Summary Judgment as to qualified immunity be denied. We make plain that we do not find that Horobin violated any rights of the Plaintiff, we simply find, given the analytical framework which governs our analysis, that a Jury issue is presented which we may not resolve as a matter of law.

NOW, THEREFORE, It is –

RECOMMENDED:

1. That the Motion of Hennepin County and the Hennepin County Sheriff's Department for Judgment on the Pleadings, or to Dismiss [Docket No. 16 ] be granted.

2.     That the Motion of Hennepin County and the Hennepin County Sheriff's Department for Judgment on the Pleadings, or to Dismiss [Docket No. 28] be denied.


Dated:  August 16, 2006                    s/Raymond L. Erickson
                                           Raymond L. Erickson
                                           CHIEF U.S. MAGISTRATE JUDGE


## N O T I C E

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.2, any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than September 1, 2006**, a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than September 1, 2006**, unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. § 636 to review the transcript in order to resolve all of the objections made.